# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CASE NO. 3:20-CV-097-RJC-DCK

| | | |
|---|---|---|
| WILLIAM ERIC WHEELER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MECKLENBURG COUNTY, KENNETH | ) | |
| CHRISTOPHER PEEK, JOEL RIDDLE, | ) | |
| and RENITA PENDERGRASS, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion To Compel Defendant Mecklenburg County" (Document No. 17) filed January 8, 2021. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion and the record, the undersigned will <u>grant</u> the motion with modification.

## BACKGROUND

William Eric Wheeler ("Plaintiff" or "Wheeler") initiated this action with the filing of his "Complaint" (Document No. 1-1) in the Superior Court of Mecklenburg County, North Carolina, on January 14, 2020. Plaintiff was a "Lead Medicolegal Death Investigator" at the "Mecklenburg County Medical Examiner's Office ("MCMEO")." (Document No. 1-1, p. 2). Mecklenburg County terminated Plaintiff's employment on March 14, 2017. (Document No. 1-1, p. 11). Plaintiff now asserts claims against Mecklenburg County, Kenneth Christopher Peek ("Peek"), Joel Riddle ("Riddle") and Renita Pendergrass ("Pendergrass") for: (1) wrongful discharge in violation of public policy; (2) violation of Section 1981 of the Civil Rights Act of 1866; (3)

violations of Section 1983 of the Civil Rights Act of 1871; and (4) violations of Article 1, Section 19 of the North Carolina State Constitution. (Document No. 1-1, pp. 13-17).

The "Answer Of Mecklenburg County And Kenneth Christopher Peek" (Document No. 2) was filed on February 21, 2020.[1] The parties then filed a "Certification And Report Of F.R.C.P. 26(f) Conference And Discovery Plan" (Document No. 3) on March 16, 2020.

On March 26, 2020, the Honorable Robert J. Conrad, Jr. issued the "Pretrial Order And Case Management Plan" (Document No. 4). Key deadlines included: mediation – November 2, 2020; discovery completion – December 7, 2020; and dispositive motions – January 6, 2021. (Document No. 4). Subsequently, the parties filed two consent motions to extend case deadlines that were allowed by the Court and ultimately extended the discovery deadline to January 8, 2021, and the dispositive motions deadline to February 8, 2021. See (Document Nos. 10, 11, 15, and 16). The parties' effort at mediating a settlement reached an impasse on December 8, 2020. (Document No. 14).

The pending "Motion To Compel Defendant Mecklenburg County" (Document No. 17) was filed on January 8, 2021 – the extended discovery deadline – and is now ripe for review and disposition. See (Document Nos. 18, 20, and 24). Case deadlines have been further extended such that dispositive motions are now due by April 20, 2021, and trial, if necessary, will be held on or about July 6, 2021. See (Document Nos. 19, 21, 26, and 27).

On February 27, 2021, the "City Of Durham's Motion To Quash" (Document No. 25) was filed with this Court. That motion is not yet ripe for review.

---

[1] The "Answer Of Joel Riddle" (Document No. 5) was later filed on March 30, 2020.

## STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

## DISCUSSION

Plaintiff's "Motion To Compel Defendant Mecklenburg County" seeks an order requiring Mecklenburg County ("Defendant") to "make two deponents available for three additional hours each," and to provide full responses to three discovery requests:

**Interrogatory No. 3** ("ROG #3) – "Identify the *Peers*."

**Request for Production No. 18** ("RFP #18") – "All *personnel-related files* for the *Principal Players*, the *Peers*, Ms. Elgohail and Plaintiff."

**Request for Production No. 19** ("RFP #19") - Any documents *relating* to the work performance of Plaintiff, the *Peers* and the *Principal Players*, including annual or mid-year performance reviews/evaluations and performance check-ins.

(Document No. 17, pp. 1-3; Document No. 17-1, pp. 6, 12).

Plaintiff notes that these requests were included in its first set of discovery requests served on March 17, 2020. (Document No. 17, p. 1). Defendant provided responses on May 1, 2020, and supplemental responses on May 11, 2020, October 20, 2020, and December 12, 2020. Id. Plaintiff asserts that there were "multiple meet and confer communications regarding deficiencies in the County's discovery responses." (Document No. 17, p. 2). It appears that most of these "meet and confer communications" involved letters and/or emails, and not telephonic, virtual, or other "live" discussions between counsel.

## A. ROG #3 and RFP #18

Plaintiff describes the parties' fundamental dispute here as "whether the County should have to produce responsive information and documents for death investigators hired after Plaintiff was terminated." (Document No. 18, p. 1). Plaintiff contends that the "Peers" definition should include death investigators through the present. (Document No. 18, p. 2). For example, Plaintiff asserts that Thomas Coefield ("Coefield") and Dr. Thomas Owens ("Owens") were primary decisionmakers in Plaintiff's termination and that their decision-making through to the present is "just as pertinent for comparator and disparate treatment purposes as the decisions made during his employment." Id. (citations omitted).

4

Plaintiff further asserts that Defendant "has refused to produce county-level or departmental level personnel files for death investigators employed after Plaintiff's termination, and may have also omitted discipline issued to his former colleague death investigators after his termination." (Document No. 18, p. 3).

"Plaintiff's First Set Of Interrogatories Requests For Production Of Documents, And Requests To Admit To Defendant Mecklenburg County" (Document No. 17-1) defines *Peers* as follows:

> j. "*Peers*" refers to: (i) all employees in the County Medical Examiner's Office, including Carol Cormier, Bill Fish, Jasmine Gordon, Christie Osorio, Barry Thornton, Erika Maggiore, Brandy Pender, Robyn Boxie, Stephanie Wooten, Pamela Feeney, Brianna Schuck, Robert Morerro, Orlando McCain, William Owens, Elizabeth Coston, Linnelle Banks, Elizabeth Fisher, Jacob May, Dr. J. Michael Sullivan, Dr. Jonathan Privette, Dr. James Lozano, and Dr. Dawn Lajoie, (ii) Plaintiff's successor(s); (iii) anyone who reported directly or indirectly to any of the *Principal Players*, and (iv) any employee county-wide who was accused of violating any of the County policies that you claim Plaintiff violated in conjunction with his suspension and termination.

(Document No. 17-1, p. 5).

In opposition to the motion to compel, Defendant asserts that since April 8, 2020, it has agreed to produce discovery responses for all the investigators named in ROG #3, and notes that three of these investigators were hired after Plaintiff's termination. (Document No. 20, pp. 1-2). Defendant further notes that "Plaintiff now seeks not only the identification of the hire date, separation date, race, sex, date of birth, reason of departure for all investigators hired after Plaintiff, including some hired three years later, but also their personnel files under Request for Production No. 18." (Document No. 20, p. 2).

Defendant asserts that it has identified, *inter alia*, all employees, regardless of department, from January 2015 through March 2020 who received disciplinary action for violation any of the

5

policies that Plaintiff violated;  and all disciplinary actions in the Medical Examiner's Office from 2015 through March 2020 involving the same decisionmakers as Plaintiff's termination. (Document No. 20, p. 5).

Defendant concludes that "Plaintiff has sufficient information to identify comparators, if any."  Id.  Moreover, Defendant asserts that Plaintiff's request is not relevant, or proportional to the needs of the case.  (Document No. 20, p. 6).

In reply, Plaintiff argues that he needs personnel files and disciplinary documents issued after his termination or his number of potential comparators will be severely limited, and he will be prejudiced.  (Document No. 24, p. 9).  In addition, Plaintiff contends that depositions in this matter have already uncovered responsive information the he seems to argue is relevant to his case.  (Document No. 24, pp. 2-3).  Plaintiff suggests that his request would encompass approximately seven individuals.  (Document No. 24, p. 3).

The undersigned finds that this issue presents a close call.  This issue should have been resolved, or brought to the Court's attention, long before the extended discovery deadline. Nevertheless, the undersigned will grant Plaintiff's request, with modification.  Defendant shall produce the personnel files for any/all of the death investigators named by Plaintiff in the reply brief who were hired by Defendant on or before **March 14, 2020**.

**B. RFP #19**

Next, Plaintiff asserts that during the depositions he "learned of two pertinent data points used to evaluate death investigators and the Office of Medical Examiner's managers and alleged decisionmakers in this case:  customer service score cards and employee climate survey results, both of which the County has withheld and continues to refuse to produce."  (Document No. 18, p. 3).  Plaintiff suggests that these scorecards include relevant information that will support his

claims. (Document No. 18, pp. 3-4). In addition, Plaintiff states that the "empirical and anecdotal information available in these climate surveys should prove fertile pretext evidence." (Document No. 18, p. 5).

In opposition, Defendant argues that the customer service score cards and employee climate survey reports are not responsive to RFP # 19. (Document No. 20, p. 6). Defendant first asserts that it has produced "performance review[s] and evaluations" and "provided Plaintiff with a link to climate survey reports, which are publicly available." Id. Defendant further asserts that the requested information is not responsive to RFP # 19 because "they are not a review by a supervisor of someone's work performance." Id. Defendant also contends the requested information lacks relevance. Id.

Plaintiff's reply argues that RFP # 19 should be construed more broadly than Defendant's interpretation. (Document No. 24, pp. 4-5). Plaintiff contends that the requested climate surveys and customer service score cards "have a 'reasonable connection' to Plaintiff's work performance." (Document No. 24, p. 5).

The undersigned finds that Defendant should provide climate survey reports and customer service cards related to Plaintiff's work performance. To the extent Defendant contends that its responsive information is already publicly available, Defendant's counsel shall confer with Plaintiff's counsel to assist in locating such information.

## C. Depositions

The pending motion to compel also seeks to compel "Defendant to make two deponents available for three additional hours each." (Document No. 17, p. 1). The parties' briefs provide little, if any, information about these proposed depositions; however, the parties' "Joint Motion

To Modify Scheduling Order" states that Defendants have "consented to Plaintiff taking a second deposition of two witnesses." (Document No. 26, p. 1)

The undersigned assumes the issue of further deposition testimony has been resolved, and commends counsel for their cooperation.

### D.  "City Of Durham's Motion To Quash" (Document No. 25)

As noted above, the pending motion to quash was filed on February 27, 2021, and is not yet ripe for review. The movant suggests the underlying subpoena is deficient because it was not properly served and/or seeks privileged information. See (Document No. 25, p. 2) (citing Fed.R.Civ.P. 45(d)(3)(A)(iii)).

The undersigned observes that the subpoena may not comply with the requirements of the "Pretrial Order…" (Document No. 4, p. 3) and/or Fed.R.Civ.P. 45(c)(2)(A).

The parties and the City of Durham are respectfully encouraged to see if they can resolve this issue without further Court intervention, otherwise the parties should timely respond and reply to the motion to quash and address the concerns addressed above.

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion To Compel Defendant Mecklenburg County" (Document No. 17) is **GRANTED with modification,** as discussed herein.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs related to the instant motion.

Signed: March 16, 2021

David C. Keesler
United States Magistrate Judge

8